January 9, 2020

|                         |   |                                        |
|-------------------------|---|----------------------------------------|
| Allan M. Shine          | : |                                        |
| v.                      | : | No. 2018-84-Appeal.<br>(PB 10-5615)    |
| Charles Moreau et al.   | : |                                        |
|                         |   |                                        |
| Charles D. Moreau et al.| : |                                        |
| v.                      | : | No. 2018-85-Appeal.<br>(PC 10-5672)    |
| Allan M. Shine et al.   | : |                                        |
|                         |   |                                        |
| Charles Moreau          | : |                                        |
| v.                      | : | No. 2018-86-Appeal.<br>(PB 10-7394)    |
| Allan M. Shine.         | : |                                        |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Allan M. Shine : 

v. : No. 2018-84-Appeal.
                                                      (PB 10-5615)

Charles Moreau et al. : 


Charles D. Moreau et al. : 

v. : No. 2018-85-Appeal.
                                                      (PC 10-5672)

Allan M. Shine et al. : 


Charles Moreau : 

v. : No. 2018-86-Appeal.
                                                      (PB 10-7394)

Allan M. Shine. : 


Present:  Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  These consolidated cases come before this Court on appeal from an April 20, 2017 order of the Providence County Superior Court denying the motions for entry of judgment filed by former Central Falls Mayor Charles Moreau and former members of the Central Falls City Council (the City Council) (collectively, the elected officials).[1]  The rationale for said denial was set forth in a February 21, 2017 decision of the

---

[1]    No doubt due to their importance and complexity, these consolidated cases have remained pending for nearly ten years.  However, in that time, many of the elected officials involved in the case no longer hold political office or have moved on to different political offices.  For the purposes of the issue currently before us, we need not engage in specifying the ever-changing parties in this case.  It suffices to say that, on appeal, the appellants represent that

Superior Court; specifically, that decision held that the elected officials were not entitled to indemnification from the State of Rhode Island[2] for attorneys' fees and legal costs that they incurred over the course of this action. On appeal, the elected officials contend that the hearing justice erred in holding that the elected officials were not entitled to indemnification from the state because, in the view of the elected officials, this Court's previous opinion in *Shine v. Moreau*, 119 A.3d 1 (R.I. 2015) (*Shine I*), provided for such an award of attorneys' fees and costs. The elected officials further contend that a suit against a receiver appointed pursuant to the terms of G.L. 1956 chapter 9 of title 45 (the Financial Stability Act)[3] is a suit against the state, and that fact, in their opinion, entitles them to indemnification from the state.

These cases came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in these appeals should not be summarily decided. After considering the written and oral submissions of the parties and after a

---

the appealing parties are former Mayor Charles Moreau and numerous former members of the Central Falls City Council (William Benson, Jr.; Richard Aubin, Jr.; Eunice DeLaHoz; and Patrick J. Szlastha), as well as an interested party—Attorney Lawrence Goldberg, the attorney for the City Council. We refer to those parties collectively as "the elected officials." For a more detailed recitation of the parties to this case and its procedural history, we refer the interested reader to our opinion in *Shine v. Moreau*, 119 A.3d 1 (R.I. 2015) (*Shine I*).

[2] The appellee in this action is the Department of Revenue for the State of Rhode Island, by and through its Director, Mark A. Furcolo. The Court notes that the caption lists Allan M. Shine. For the purpose of clarity, we deem it necessary to explain that Mr. Shine was the trustee appointed for Central Falls in bankruptcy pursuant to the terms of Article IV, Section S of the "Fourth Amended Plan for the Adjustment of Debts of the City of Central Falls, Rhode Island." However, that bankruptcy proceeding has since come to an end.
We need not detail any of the remaining parties to this case, but we once again refer the interested reader to our opinion in *Shine I*.

[3] We note that there were several individuals who served as receiver for the City of Central Falls during the period of time preceding the filing of these cases and during the pendency of the cases. For the purposes of this opinion, we shall simply make a generic reference to "the receiver."

thorough review of the record, we are of the opinion that cause has not been shown and that the appeals may be resolved at this time without further briefing or argument.

For the reasons set forth in this opinion, we affirm the order of the Superior Court.

## I

## Facts and Travel

The background of these cases is well-known to this Court, in that this is the third time that we have been asked to opine with respect to an issue relevant to these cases. For that reason, we need not and, indeed, will not recite the complicated and lengthy facts. We refer the interested reader to our previous opinions in this action—*Moreau v. Flanders*, 15 A.3d 565 (R.I. 2011) (*Flanders*) and *Shine I*. All that is necessary to the resolution of these appeals is a brief recitation of the procedural posture of the cases. In so doing, we rely primarily on our previous opinions and various documents from the record.

In July of 2010, a receiver was appointed for the fiscally-troubled City of Central Falls (the City) pursuant to the then-new Financial Stability Act. These cases arose out of conflicts between the receiver on the one hand and the Mayor and City Council on the other. Essentially, these cases required a determination as to the constitutionality of the Financial Stability Act under which the receiver was appointed. This Court ultimately held the Financial Stability Act to be constitutional in our opinion in *Flanders*. *Flanders*, 15 A.3d at 574-89.

Thereafter, the parties continued to litigate about the issues of attorneys' fees and indemnification. The cases returned to this Court, and we then opined that the receiver was not entitled to recover attorneys' fees, that Mayor Moreau was entitled to indemnification for his

legal fees and costs, and that the attorney for the City Council was entitled to recover his fees.[4] *Shine I*, 119 A.3d at 8-19.

The parties come before us now with respect to a dispute as to *who* is required to indemnify the elected officials for their legal fees and costs—does the liability rest solely with the City, or the City *and* the state?

This Court is aware that the City was engaged in a proceeding in bankruptcy court, but what transpired there has no bearing on the issue before us. Based on the record and exhibits before this Court on appeal, it is clear that, in conjunction with that proceeding, the elected officials entered into a settlement with the City with respect to indemnification and released all their remaining claims against the City. Therefore, any claims for indemnity against the City are not before us. We are concerned only with determining whether the elected officials are also entitled to indemnification from the state.

In June of 2016, the elected officials filed separate motions for entry of judgment in Superior Court, contending, for what seems to this Court to have been the first time, that they were also entitled to indemnification from the state. The Department of Revenue, on behalf of the state, opposed the motions. On February 21, 2017, the hearing justice issued a written decision on the elected officials' motions for entry of judgment. He denied the motions for entry of judgment, holding that "[a] plain reading of the statute and City Ordinance [at issue] require the City of Central Falls, not the State, to indemnify the Mayor and the City Council members

---

[4]   Our specific mandate reads as follows:

> "These cases may be remanded to [the Superior Court] for: (1) the entry of summary judgment in accordance with this opinion; (2) a determination of the amount of indemnification that the Mayor is entitled to receive; and, (3) the amount of attorneys' fees that Attorney Goldberg is entitled to receive." *Shine I*, 119 A.3d at 19.

who brought this lawsuit in their official capacities."  An order entered to that effect on April 20, 2017.[5]  The elected officials filed a timely notice of appeal.

## II

## Standard of Review

We begin by noting that there do not appear to be any factual issues in dispute in these cases. We are primarily tasked with a pure question of law—*i.e.*, explicating our previous decision in *Shine I* and the legal authorities on which it was based.  When this Court is presented with a pure question of law, this Court conducts a *de novo* review.  *Waterman v. Caprio*, 983 A.2d 841, 844 (R.I. 2009) ("This Court * * * uses a *de novo* standard to review a trial justice's rulings on questions of law.").

## III

## Analysis

The elected officials contend that this Court's previous decision in *Shine I* provided for indemnification for the elected officials from the state, as well as from the City.  It is their claim that the mandate in that case remanded the matter for, among other things, entry of summary judgment against the state with respect to the indemnity issue.  Consequently, they rely on the "mandate rule," which requires the lower court to follow the specific mandate of this Court and not to "vary it, or examine it for any other purpose than execution; or give any other or further

---

[5]  We note that the April 20, 2017 order denying the motions for entry of judgment was not in so many words styled as a final judgment.  However, in this Court's opinion, the order clearly has such an element of finality as to be appealable, since it represents the final decision on the issue of the elected officials' alleged right to be indemnified by the state. *See Town of Lincoln v. Cournoyer*, 118 R.I. 644, 648, 375 A.2d 410, 412-13 (1977) ("[W]e will review an order or decree which, although in a strict sense interlocutory, does possess such an element of finality that action is called for before the case is finally terminated in order to prevent clearly imminent and irreparable harm.").  What is more, the order effectively ended the cases; once the order issued, there was nothing that remained to be done in the cases.

relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded * * *." *Pleasant Management, LLC v. Carrasco*, 960 A.2d 216, 223 (R.I. 2008) (internal quotation marks omitted).

In addressing the elected officials' contentions on appeal, our analysis can begin and end with a review of our opinion in *Shine I*. In the judgment of this Court, that opinion is abundantly clear and leaves no room for doubt—the elected officials are entitled to indemnification from the City *but not from the state*.

In reaching our final determination in *Shine I* with respect to the legal fees and costs accrued by Mayor Moreau and Attorney Goldberg, we relied primarily on one statutory section and three City Ordinances. We deem it instructive to review those sources in more detail.

First, the Court relied upon G.L. 1956 § 45-15-16, which provides in pertinent part as follows:

> "All * * * *city council*[*s*] * * * shall * * * indemnify any and all * * * public employees * * * [and] officials * * * from all loss, cost, expense, and damage, including legal fees and court costs, if any, arising out of any * * * action * * * by reason of any intentional tort or by reason of any alleged error or misstatement or action or omission, or neglect or violation of the rights of any person under any federal or state law, including misfeasance, malfeasance, or nonfeasance * * * if the elected or appointed * * * official * * * at the time of the intentional tort or act, omission or neglect, was acting within the scope of his or her official duties or employment. *The municipality * * * may decline to indemnify any elected or appointed * * * official * * * for any misstatement, error, act, omission, or neglect if it resulted from willful, wanton, or malicious conduct on the part of the * * * official * * *. The indemnity shall be provided by the city * * * council * * * on a case by case basis or by ordinance of general application. The ordinance or agreement to indemnify shall include, among other things, the *provision of legal counsel at the expense of the city or town* and/or the reimbursement for attorneys' fees and other expenses incurred in connection with the conduct of the defense, including payment of the judgment." (Emphasis added.)

This Court further relied upon the Central Falls Code of Ordinances, Chap. 2, Art. III, Div. 3, § 2-108 (City Ordinance) which provided as follows:

> "*The city* shall indemnify any and all public employees [and] officials * * * from all loss, cost, expense and damage, including legal fees and court costs, if any, arising out of any * * * action * * * by reason of any intentional tort or by reason of any alleged error or misstatement or action or omission, or neglect or violation of the rights of any person under any federal or state law, including misfeasance, malfeasance or nonfeasance * * * if such employee [or] official * * * at the time of such intentional tort or act, omission or neglect, was acting within the scope of his official duties or employment." (Emphasis added.)

City Ordinance § 2-109 provided as follows:

> "*The city* shall decline to indemnify any such employee [or] official * * * for any misstatement, error, act, omission or neglect if the same resulted from willful, wanton or malicious conduct on the part of such employee [or] official * * *. *The city council* shall decide, on a case-by-case basis, whether indemnification should be allowed or declined." (Emphasis added.)

Lastly, City Ordinance 2-110(b) states that, "[t]*he city council* shall have the authority to approve or deny any and all requests for outside legal counsel on a case-by-case basis." (Emphasis added.)

It is clear beyond peradventure to any reader that every just-quoted statutory or ordinance section applied specifically to the city, the town, the municipality, or the city council. Absolutely nowhere in those legislative provisions is there any language that could even remotely lead to a rational conclusion that indemnification for the elected officials should come from the state as well as the municipality or the City Council. To so conclude would fly in the face of the sources relied upon by this Court in *Shine I*. Nor have we been able to locate *any other language* in *Shine I* that would lead to a conclusion that the elected officials were entitled to indemnification from the state. This Court's opinion in *Shine I* is plainly restricted to the City.

For that reason, the elected officials' argument that this Court in *Shine I* mandated indemnification from the state and that the Superior Court defied this Court's mandate in not so holding is unavailing.

The elected officials further aver as follows: (1) "[t]he Receiver, who was at all times an instrumentality of the State in the relevant litigation below [having been appointed by the state's Director of Revenue], precipitated the litigation against the Appellants, and the State was directly responsible for the costs and expenses incurred by the Appellants for which they seek indemnification;" (2) pursuant to the Financial Stability Act, "[Mayor] Moreau was effectively stripped of his elected Mayoral position * * * and became relegated to an advisor to the Receiver and, therefore, also an instrumentality of the State;" (3) "the Mayor's and City Council's actions in challenging the [Financial Stability Act] were, in substantial part, in furtherance of and required pursuant to their sworn duties and obligations to uphold the laws and the Constitution of this State, in addition to their duties to the City of Central Falls;" and (4) "the exceptionally unique and unprecedented circumstances and complex legal issues presented by this litigation warrant the indemnification sought by the Appellants pursuant to the Supreme Court's inherent equitable authority to fashion an appropriate remedy."

We do not find any of those arguments convincing given the clear language of this Court's opinion in *Shine I*. What is more, we note that the receiver, even though he was appointed by the state, essentially stood in the shoes of the Mayor and City Council. *See* § 45-9-7(c) ("Upon the appointment of a receiver, the receiver shall have the right to exercise the powers of the elected officials * * *; provided, further, that the powers of the receiver shall be superior to and supersede the powers of the elected officials of the city, town, or fire district shall continue to be elected in accordance with the city or town or fire district charter, and shall serve

- 8 -

in an advisory capacity to the receiver. * * * In the event a conflict arises between the chief elected official or city or town council or fire district governing body and the receiver, the receiver's decision shall prevail."); *see also Francis v. Buttonwood Realty Co.*, 765 A.2d 437, 443 (R.I. 2001) ("[T]he status of a receiver has been described as that of one who stands in the shoes of the person over whose estate he has been appointed, and is clothed with only such rights of action as might have been maintained by such person.") (internal quotation marks omitted). The receiver was, for all intents and purposes, the City.[6] Thus, the elected officials' arguments that the receiver was somehow *de facto* acting on behalf of the state or as an instrumentality of the state certainly do not carry the day. Additionally, we perceive no basis for acceding to the elected officials' invitation to invoke our inherent equitable authority to fashion an appropriate remedy in this instance.

Accordingly, in our judgment, it is abundantly clear that this Court's opinion in *Shine I* provided for indemnification to the elected officials from the City *but not from the state*. As such, we affirm the order of the Superior Court denying the elected officials' motions for entry of judgment.

This case represents the third time that this Court has been asked to opine on issues which arose in the context of this lengthy disagreement over the constitutionality of the Financial Stability Act and the indemnification of Mayor Moreau and members of the City Council for challenging the constitutionality of that act in court. While we commend all parties for their zealous and helpful advocacy throughout the pendency of this case, we are hopeful that this opinion provides an ending to this action. *See Arena v. City of Providence*, 919 A.2d 379, 396

---

[6] What is more, we note that the Financial Stability Act specifically states that "[n]othing in this chapter shall be construed to pledge the credit and assets of the state to pay the obligations or indebtedness, including bonded indebtedness, of any municipality or fire district." G.L. 1956 § 45-9-14.

(R.I. 2007) ("It is time for this litigation to end."); *Northern Trust Co. v. Zoning Board of Review of Town of Westerly*, 899 A.2d 517, 520 (R.I. 2006) (mem.) ("We are more than persuaded that the instant plaintiffs have had their day in court—and then some. The time has come for this litigation to end.").

## IV

## Conclusion

For the reasons set forth herein, we affirm the order of the Superior Court. We remand the record to that tribunal.


Justice Goldberg did not participate.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Allan M. Shine v. Charles Moreau et al.<br>Charles D. Moreau et al. v. Allan M. Shine et al.<br>Charles Moreau v. Allan M. Shine. |
| **Case Number** | No. 2018-84-Appeal.<br>(PB 10-5615)<br>No. 2018-85-Appeal.<br>(PC 10-5672)<br>No. 2018-86-Appeal.<br>(PB 10-7394) |
| **Date Opinion Filed** | January 9, 2020 |
| **Justices** | Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Michael A. Silverstein |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Theodore Orson, Esq.<br>Harmony Conti Bodurtha, Esq. |
| | For Defendants:<br><br>John O. Mancini, Esq.<br>Lawrence L. Goldberg, Esq.<br>Matthew T. Jerzyk, Esq.<br>Michael L. Mineau, Esq. |